**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

CENTRO DE PERIODISMO
INVESTIGATIVO,
LATINOJUSTICE PRLDEF, and
CENTER FOR CONSTITUTIONAL
RIGHTS

                Plaintiffs,

        v.

DEPARTMENT OF THE TREASURY,

              Defendant.

---

Case No. 19-cv-4417 (JPO)


**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF PLAINTIFFS' CROSS MOTION FOR SUMMARY JUDGMENT**

LIA FIOL-MATTA
LatinoJustice PRLDEF
475 Riverside Dr., Suite 1901
New York, NY 10115
Tel. (212) 739-7582
lfiol-matta@latinojustice.org

CARLOS RAMOS-HERNANDEZ
Centro de Periodismo Investigativo
655 Calle McKinley, Apt. B
San Juan, PR 00907
Tel: (787) 457-5102
cframoshernandez@outlook.com
*Pro Hac Vice*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................... 1

BACKGROUND ............................................................................. 2

ARGUMENT ................................................................................. 5

I.      Legal Standard ................................................................. 5

II.     Treasury's Declaration Is Insufficiently Specific and Inadequately Categorical. .............. 7

III.    The Challenged Records Are Improperly Withheld Under Exemption 6 ......................... 8

    A.    The Privacy Interest in the Names, Biographical Information, and Employment History of Board Candidates is De Minimis. ................................................. 10

    B.    Whether Individuals Knew They Were Considered for Appointment Is Irrelevant. .... 11

    C.    Assessments of Board Candidates' Professional Background and Qualifications Are Different from Performance Evaluations. ................................................. 12

    D.    Public Knowledge that an Individual Was Considered for the Fiscal Control Board Is Irrelevant and Harmless. .............................................................. 14

    E.    Any Possible Substantial Privacy Interest in Board Candidates' Names, Biographical Information, and Employment History is Outweighed by the Public Interest in Disclosure. 15

IV.     The Challenged Records Are Improperly Withheld Under Exemption 5 ......................... 17

    A.    The Deliberative Process Privilege Does Not Apply to Names and Factual Background Summaries. ............................................................................ 17

        1.    The Challenged Records Are Not "Deliberative" But Rather Purely Factual. ......... 19

        2.    Alternatively, Defendant Must Reasonably Segregate All "Purely Factual" Portions of the Withheld Records. ................................................................. 21

        3.    Disclosing the Challenged Records Does Not Foreseeably Harm Any Interest Protected by the Deliberative Process Privilege. ........................................... 22

    B.    Defendants' Declaration is Insufficiently Specific to Support its Withholding Pursuant to the Attorney-Client Privilege, and any Names Referenced Should be Disclosed. ........... 24

    C.    The Presidential Communications Privilege Applies Only to Communications Shared with Treasury Officials Within the Narrow Group of Protected Presidential Advisers. ....... 24

CONCLUSION ............................................................................. 26

# TABLE OF AUTHORITIES

## CASES

*ACLU v. Dep't of Def.*,
435 F. Supp. 3d 539 (2020) ........................................................................................ 25

*ACLU v. Dep't of Just.*,
563 F. Supp. 3d 183 (S.D.N.Y. 2021)........................................................................ 15

*ACLU v. Dep't of Just.*,
No. 15-1954, 2016 WL 889739 (S.D.N.Y. Mar. 4, 2016) ........................................... 25

*Adelante Ala. Worker Ctr. v. Dep't of Homeland Sec.*,
376 F. Supp. 3d 345 (S.D.N.Y. 2019)........................................................................ 15

*Ass'n of Nat. Advertisers, Inc. v. F.T.C.*,
No. 75-1304, 1976 WL 1294 (D.D.C. July 15, 1976) ................................................ 18

*Associated Press v. DOD*,
554 F.3d 274 (2d Cir. 2009)........................................................................................ 10

*Associated Press v. U.S. Dep't of Def.*,
554 F.3d 274 (2d Cir. 2009)........................................................................................ 15

*Brennan Ctr. for Justice at N.Y. Univ. Sch. of Law v. Dep't of Justice*,
697 F.3d 184 (2d Cir. 2012)................................................................................. 18, 24

*Carney v.  Dep't of Just.*,
19 F.3d 807 (2d Cir. 1994)............................................................................................ 5

*Church of Scientology Int'l v. Dep't of Just.*,
30 F.3d 224 (1st Cir. 1994) .............................................................................. 6, 8, 22

*CLEAR v. U.S Customs & Border Prot.*,
No. 19-7079, 2022 WL 16636686 (E.D.N.Y. Nov. 2, 2022) ............................. 7, 8, 21

*Core v. U.S. Postal Service*,
730 F.2d 946 (4th Cir. 1984) ...................................................................................... 11

*Dep't of State v. Ray*,
502 U.S. 164 (1991)........................................................................................... 5, 9, 15

*Dep't of State v. Wash. Post Co.*,
456 U.S. 595 (1982).......................................................................................... 8, 9, 10

*Dep't of the Air Force v. Rose*,
425 U.S. 352 (1976) ................................................................................................................ 9

*Elec. Priv. Info. Ctr. v. Dep't of Homeland Sec.*,
892 F. Supp. 2d 28 (D.D.C. 2012) ........................................................................................ 22

*Elec. Priv. Info. Ctr. v. Dep't of Just.*,
584 F. Supp. 2d 65 (D.D.C. 2008) ........................................................................................ 24

*Energy Policy Advocates v. Dep't of Just.*,
No. 19-03307, 2023 WL 4198200 (D.D.C. June 27, 2023) .................................................. 23

*Fin. Oversight & Mgmt. Bd. for Puerto Rico v. Aurelius Inv., LLC*,
140 S.Ct. 1649 (2020) ....................................................................................................... 3, 12

*Fin. Oversight and Mgt. Bd. for Puerto Rico v. Centro de Periodismo Investigativo, Inc.*,
143 S.Ct. 1176 (May 11, 2023) .............................................................................................. 4

*Florez v. CIA*,
829 F.3d 178 (2d Cir. 2016) ................................................................................................... 6

*FLRA v. Dep't of Commerce*,
962 F.2d 1055 (D.C. Cir. 1992) ............................................................................................ 13

*Grand Cent. P'ship, Inc. v. Cuomo*,
166 F.3d 473 (2d Cir. 1999) ............................................................................................. 5, 17

*Halpern v. FBI*,
181 F.3d 279 (2nd Cir. 1999) ................................................................................................. 6

*Hopkins v. U.S. Dep't of Hous. & Urb. Dev.*,
929 F.2d 81 (2d Cir. 1991) ....................................................................................... 18, 21, 22

*In re Sealed Case*,
121 F.3d 729 (D.C. Cir. 1997) ........................................................................................ 24, 25

*Intell. Prop. Watch v. U.S. Trade Representative*,
134 F. Supp. 3d 726 (S.D.N.Y. 2015) .................................................................................... 7

*Judicial Watch v. Dep't of State*,
875 F. Supp. 2d 37 (D.D.C. 2012) .................................................................................. 18, 21

*Judicial Watch, Inc. v. Dep't of Just.*,
365 F.3d 1108 (D.C. Cir. 2004) ............................................................................................ 25

*Judicial Watch, Inc. v. Food & Drug Admin.*,
449 F.3d 141 (D.C. Cir. 2006) .................................................................... 6

*King v. Dep't of Just.*,
830 F.2d 210 (D.C. Cir. 1987) ....................................................... 6, 7, 8, 20

*Kurzon v. Dep't of Health and Human Services,*
649 F. 2d 65 (1st Cir. 1981) ................................................................ 14, 15

*Mapother v. Dep't of Just.*,
3 F.3d 1533 (D.C. Cir. 1993) ............................................................. 19, 20

*Media LLC v. Dep't of Agriculture*,
515 F.3d 1224 (D.C. Cir. 2008) .......................................................... 9, 10

*Milner v. Dep't of Navy*,
562 U.S. 562 (2011) ................................................................................. 5

*N.Y. Times. v. FBI,*
297 F. Supp. 3d 435 (S.D.N.Y. 2017) ...................................................... 21

*Nat'l Day Laborer Org. Network v. United States Immigr. & Customs Enf't*,
486 F. Supp. 3d 669 (S.D.N.Y. 2020) ...................................................... 21

*Nat'l Imm. Project of the Nat'l Lawyers Guild v. Dep't of Homeland Sec.*,
868 F. Supp. 2d 284 (S.D.N.Y. 2012) ...................................................... 17

*People for the Am. Way Found. v. Nat'l Park Serv.*,
503 F. Supp. 2d 284 (D.D.C. 2007) .................................................... 18, 19

*Petroleum Info. Corp. v. United States Dep't of the Interior*,
976 F.2d 1429 (D.C.Cir.1992) ............................................................ 19, 20

*Physicians Committee for Resp. Medicine v. Glickman*,
117 F. Supp. 2d 1 (D.D.C. 2000) .................................................. 11, 15, 16

*Pub. Citizen, Inc. v. Off. of Mgmt. & Budget*,
598 F.3d 865 (D.C. Cir. 2010) ................................................................ 18

*Reps. Comm. for Freedom of the Press v. FBI*,
3 F.4th 350 (D.C. Cir. 2021) ............................................................. 22, 23

*Ripskis v. HUD*,
746 F.2d 1 (D.C. Cir.1984) .................................................................... 13

*Rosenberg v. Dep't of Def.*,
442 F. Supp. 3d 240 (D.D.C. 2020) ........................................................................ 22

*SafeCard Services v. SEC*,
926 F.2d 1197 (D.C.Cir. 1991) .............................................................................. 6

*Tokar v. Dep't. of Just.*,
304 F. Supp. 3d 81 (D.D.C. 2018) ..................................................................... 11, 16

*Tomscha v. GSA*,
158 Fed. Appx. 329 (2d Cir. 2005) ....................................................................... 10

*White Coat Waste Project v. Dep't of Veterans Affs.*,
443 F. Supp. 3d (D.D.C. 2020) ......................................................................... 18, 19

*Wisdom v. United States Trustee Program*,
232 F. Supp. 3d  (D.D.C. 2017) ............................................................................ 13

*Wood v. FBI*,
432 F.3d 78 (2d Cir. 2005) ................................................................................. 6, 10

## STATUTES

48 U.S.C. § 2101 ........................................................................................................ 1

48 U.S.C. § 2121 (c)(1) ............................................................................................ 3

48 U.S.C. § 2121 (f)(1) ............................................................................................. 3

48 U.S.C. § 2121 (f)(2) ............................................................................................. 3

48 U.S.C. § 2124 (c)(1) ............................................................................................. 4

48 U.S.C. § 2141 ........................................................................................................ 3

48 U.S.C. § 2142 ........................................................................................................ 3

48 U.S.C. § 2143 ........................................................................................................ 3

48 U.S.C. § 2144 ........................................................................................................ 3

48 U.S.C. § 2178 ........................................................................................................ 4

5 U.S.C. § 552 ............................................................................................................ 1

5 U.S.C. § 552 (a)(4)(B) ................................................................................................. 5

5 U.S.C. § 552 (a)(8)(A)(i)(I)) ...................................................................................... 22

5 U.S.C. § 552 (b) ......................................................................................................... 21

5 U.S.C. § 552 (b)(6) ....................................................................................................... 8

## RULES

Fed. R. Civ. P. 56 ............................................................................................................ 1

Fed. R. Civ. P. 56(a) ...................................................................................................... 5

## TREATISES

Efrén Rivera Ramos, American Colonialism in Puerto Rico: The Judicial and Social

Legacy (2007) ............................................................................................................ 2

## CONSTITUTIONAL PROVISIONS

U.S. Const. Art. IV § 3, cl. 2 ........................................................................................ 2

## OTHER AUTHORITIES

U.S. Gov't Accountability Off., GAO-18-387, Puerto Factors Contributing to the Debt

Crisis and Potential Federal Actions to Address Them (2018)...................................... 2

## PRELIMINARY STATEMENT

Pursuant to FED. R. CIV. P. 56 and Local Rules 56.1, Centro de Periodismo Investigativo (CPI), LatinoJustice PRLDEF, and Center for Constitutional Rights (collectively, Plaintiffs) by and through their undersigned counsel, hereby submit this Memorandum of Law in Opposition to the Motion for Summary Judgment filed by Defendant U.S. Department of the Treasury ("Treasury" or "Defendant") and in support of Plaintiffs' Cross-Motion for Summary Judgment.

Most challenged records contain the names and professional background information of candidates, selected and unselected, to become members of the Financial Oversight and Management Board of Puerto Rico ("Board" or "Fiscal Control Board") under the Puerto Rico Oversight, Management and Economic Stability Act ("PROMESA"), 48 U.S.C. §§ 2101 *et seq.* Treasury has improperly withheld the challenged records under the Freedom of Information Act's (FOIA), 5 U.S.C. §§ 552 *et seq.*, Exemption 6 privacy interest privilege and Exemption 5 deliberative process, attorney-client, and presidential communications privileges. First, the Treasury's declaration in support of its motion for summary judgment is insufficiently specific and inadequately categorical. Second, any Exemption 6 substantial privacy interest in the Board candidates' names, biographical information, and employment history is outweighed by the public interest in disclosure. Releasing the challenged records will help the public understand the influence of different stakeholders, including creditor groups and labor unions, in the selection, vetting, and appointment process of the Fiscal Control Board, as well as who was considered (and who was not), the criteria discussed to vet candidates (or lack of), and potential conflicts of interest issues that existed prior to and after the Board's establishment. Third, several withheld records under Exemption 5 are non-deliberative and purely factual and should be released or further segregated.

The challenged records are a critical part of Puerto Rico's history and its relationship with the United States. They tell the story of how this undemocratic Board came into existence shedding light on the federal government's actions creating it. For the reasons set forth herein, this Court should deny Defendant's Motion for Summary Judgment and enter summary judgment in Plaintiffs' favor.

## BACKGROUND

The United States and Puerto Rico relationship is complicated and complex, but most of all, unequal, and for many, colonial. *See generally* EFRÉN RIVERA RAMOS, AMERICAN COLONIALISM IN PUERTO RICO: THE JUDICIAL AND SOCIAL LEGACY (2007). Without delving into more than 125 years of history, two issues must be emphasized: (1) Puerto Rico remains subordinated to Congress' plenary power and control, under the Territory Clause, U.S. CONST. Art. IV § 3, cl. 2 and (2) multiple, structural socio-economic inequalities and factors, many driven by federal policies, led to Puerto Rico's debt crisis. *See generally* U.S. GOV'T ACCOUNTABILITY OFF., GAO-18-387, PUERTO FACTORS CONTRIBUTING TO THE DEBT CRISIS AND POTENTIAL FEDERAL ACTIONS TO ADDRESS THEM (2018). Faced with this reality, in the summer of 2015, then-Governor Alejandro García-Padilla announced that Puerto Rico's debt was not payable. Valentín Decl. ¶7.

At this time, President Barack Obama, through the Department of the Treasury, called upon Congress to provide the Puerto Rico government with access to a debt-restructuring process along with independent fiscal oversight while still respecting Puerto Rico's autonomy. *Id.* ¶9. The U.S. House of Representatives Natural Resources Committee, in charge of Puerto Rico's affairs in Congress, commenced working on a framework for PROMESA that relied on "broad-based collaboration" with federal government actors and "a range of economic, business and market stakeholders." *Id.* ¶10.

When PROMESA was finally introduced, it brought about extensive public discussion, criticism, and lobbying efforts. *Id.* ¶11. Many across the political spectrum, federal and local, opposed the bill because it was undemocratic and fiscally unfair for Puerto Ricans and for stateside U.S. taxpayers. *Id.* ¶11. Notwithstanding, Puerto Rico and federal officials lobbied strongly in favor of the bill, which resulted in Congress approving PROMESA with bipartisan support. *Id.* On June 30, 2016, President Obama signed it into law. *Id.* ¶12-13.

PROMESA establishes a powerful Fiscal Control Board, "within" the Puerto Rico government, 48 U.S.C. § 2121 (c)(1), empowered to have the last word in approving fiscal plans and budgets; thus, giving the entity a strong grip over policy measures and spending priorities. *Id.* §§ 2141-2144. Aside from the procedural and technical aspects mentioned in Treasury's declaration, Dickerman Decl. ¶4-5, ECF #83 at 2-3, Board members are required to have "knowledge and expertise in finance, municipal bond markets, management, law, or the organization or operation of business or government," 48 U.S.C. § 2121 (f)(1), and Puerto Rico public officers, candidates for elected office, and former elected officials are ineligible to serve on the Board. *Id.* § 2121 (f)(2).[1] PROMESA's eligibility requirements fail to consider any participation from the people of Puerto Rico or its representatives during the appointment process despite the Board's extensive authority over the island's affairs. Valentín Decl. ¶¶15-18.

For the past five years, Luis Valentín Ortiz, an investigative journalist working for lead-Plaintiff CPI, has written and collaborated on more than 30 news articles covering everything related to Puerto Rico's fiscal crisis and debt restructuring process, the creation, implementation, and effects of PROMESA, and the Board's actions in exercising its powers. *Id.* ¶¶25-27.

---

[1] The President appoints the seven members of the Board, six of which are selected from candidate lists submitted by Congress, without Senate confirmation. *See also Fin. Oversight & Mgmt. Bd. for Puerto Rico v. Aurelius Inv., LLC,* 140 S.Ct. 1649 (2020).

After the Board composition was announced, Journalist Valentín Ortiz and CPI have extensively reported on how the entity has fully and unabashedly exercised its powers under PROMESA. *Id.* ¶¶27-28. During its tenure, the Board has called for budget cuts in government agencies, municipalities, the University of Puerto Rico, and a public-school shutdown program, among others. *Id.* ¶24. It has repeatedly enforced its version of the government budget and fiscal plans and has thoroughly controlled government spending, by revising, conditioning, and, in many instances, rejecting Puerto Rico agency requests to redirect or use public funds. *Id.* ¶28. The Board has even forced the Puerto Rico government to nullify local laws involving pensions, health insurance, and workers' benefits. *Id.* CPI's investigative reporting has further revealed that hundreds of millions of Puerto Rico taxpayers' money have been spent on advisers that have worked on the restructuring process (more than $1.1 billion as of May 2023) and several of these consultant firms have been flagged for potential conflicts of interest. *Id.* ¶30. This led Congress to enact the *Puerto Rico Recovery Accuracy in Disclosure Act,* 48 U.S.C. § 2178, which increased disclosure requirements among those involved in the debt-restructuring process. *Id.* ¶30.

Following the creation of PROMESA, for the past several years, CPI has engaged in public records litigation to oversee and shed light on the Board's actions.[2] In that spirit and like those efforts, CPI, LatinoJustice, and the Center for Constitutional Rights, submitted this FOIA request on January 27, 2017. ECF #1. As detailed in the Complaint, ECF #1, ¶¶ 21-40, for over two years, Defendant failed to produce any responsive records, despite the parties agreeing to an initial narrowing of search terms, production on a rolling basis, and various amended deadlines. The

---

[2] The Freedom of Information Act does not apply to the Board, 48 U.S.C. § 2124 (c)(1). After more than five years of litigation, the U.S. Supreme Court recently "assumed without deciding" that the Fiscal Control Board has sovereign immunity and cannot be sued in federal court under Puerto Rico's constitutional right to access information. *See Fin. Oversight and Mgt. Bd. for Puerto Rico v. Centro de Periodismo Investigativo, Inc.*, 143 S.Ct. 1176 (May 11, 2023).

initial request, comprising fifteen (15) categories of documents, sought, among other information,

names, and factual information of all candidates considered by Defendant for selection to the first

Fiscal Control Board, as well as communications between agency employees involved in the

selection process. ECF #1, ¶19. Because of Defendant's lack of response and failure to comply

with its statutory obligations, Plaintiffs filed this Complaint on May 16, 2019. Plaintiffs narrowed

their request several times to expedite production. With production complete, Plaintiffs challenge

the withholding of identities, biographies, and lists of Board candidates in the exhibits submitted

by Defendant at ECF #83.

## ARGUMENT

### I.   **Legal Standard**

The main purpose of the FOIA is to "promote honest and open government." *Grand Cent.*

*P'ship, Inc. v. Cuomo*, 166 F.3d 473, 478 (2d Cir. 1999). The statute was intended "to pierce the

veil of administrative secrecy and to open agency action to the light of public scrutiny." *Dep't of*

*State v. Ray*, 502 U.S. 164, 173 (1991) (citations omitted).

A federal court analyzes an agency's decision to withhold or redact records requested under

FOIA applying *de novo* review. 5 U.S.C. § 552(a)(4)(B). To win a summary judgment, the moving

party must establish that "there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). FOIA exemptions must be

"narrowly construed" and the burden is on the government. *Milner v. Dep't of Navy*, 562 U.S. 562,

565 (2011). "[T]o prevail on a motion for summary judgment in a FOIA case, the defending agency

has the burden of showing that . . . any withheld documents fall within an exemption to FOIA."

*Carney v.  Dep't of Just.*, 19 F.3d 807, 812 (2d Cir. 1994).

The defending agency must be specific about its reasons for withholding or redacting documents. *See Florez v. CIA*, 829 F.3d 178, 182 (2d Cir. 2016). When an agency claims an exemption to withhold a record, in whole or in part, "[a]ny measure will adequately aid the court if it provide[s] a relatively detailed justification, specifically identif[ies] the reasons why a particular exemption is relevant and correlate[es] those claims with the particular part of a withheld document to which they apply." *Judicial Watch, Inc. v. Food & Drug Admin*., 449 F.3d 141, 146 (D.C. Cir. 2006) (citations omitted) [hereinafter *Judicial Watch* I].

With respect to agency affidavits, declarations, or a *Vaughn* index explaining why withheld documents fall within an exemption, "the good faith presumption that attaches to agency affidavits only applies when accompanied by reasonably detailed explanations of why material was withheld. Absent a sufficiently specific explanation from an agency, a court's *de novo* review is not possible and the adversary process envisioned in FOIA litigation cannot function." *Halpern v. FBI*, 181 F.3d 279, 295 (2nd Cir. 1999).

To the extent an agency seeks to rely on affidavits and declarations, these documents must also be "non-conclusory" and describe the documents and justifications for nondisclosure with "reasonably specific detail." *SafeCard Services v. SEC,* 926 F.2d 1197, 1200 (D.C.Cir. 1991); *see also Wood v. FBI*, 432 F.3d 78, 85 (2d Cir. 2005). "[C]ategorical descriptions of the withheld material or the consequences of its disclosure are . . . inadequate." *King v. Dep't of Just.*, 830 F.2d 210, 224 (D.C. Cir. 1987). A declaration must afford the plaintiff "a meaningful opportunity to contest, and the district court an adequate foundation to review, the soundness of the withholding." *Id.* at 218; *see also Church of Scientology Int'l v. Dep't of Just.*, 30 F.3d 224, 231 (1st Cir. 1994) (rejecting declarations that "treat the documents within various exemption categories as a group, without referring to specific documents."). If insufficient, a court should request the agency to

supplement or amend its declaration and further order to segregate additional portions, if applicable. *Intell. Prop. Watch v. U.S. Trade Representative*, 134 F. Supp. 3d 726, 747 (S.D.N.Y. 2015) (requiring supplemental declarations to provide "a sufficient degree of detail" as to withholdings and redactions"). "While a document-by-document or page-by-page description of withheld materials is not required, [courts] [have] welcome[d] such specificity." *CLEAR v. U.S Customs & Border Prot.*, No. 19-7079, 2022 WL 16636686 at *4 (E.D.N.Y. Nov. 2, 2022).

Here, there are no material facts in dispute. Instead, the issues before the Court rest on the legal interpretation of the protections from disclosure afforded by FOIA Exemption 6's privacy interest privilege and Exemption 5's deliberative process, attorney-client, and presidential communications privileges. The Defendant has failed to meet their burden to demonstrate that the information in question was properly withheld under these exemptions. Therefore, Plaintiffs are entitled to summary judgment.

## II.   Treasury's Declaration Is Insufficiently Specific and Inadequately Categorical.

As a threshold matter, Treasury has failed to provide a reasonably specific justification for not disclosing the challenged records. Defendant's redactions under Exemptions 5 and 6 are impermissibly broad, inadequately categorical, and inconsistent. *King*, 830 F.2d at 224. The Dickerman Declaration supporting Treasury's Motion for Summary Judgment and Memorandum of Law ("Def. MOL"), ECF #82 and 83, gives sweeping justifications for withholding records, without correlating to the records or particular parts of them, which has forced Plaintiffs to craft their arguments without the information necessary to fully present their case to the Court. For example, not every challenged record squarely fits the Treasury's inadequate categorical explanations for both Exemptions 5 and 6. As discussed later in this brief, there are critical differences among the lists and charts detailing the factual information of unselected Board

candidates. Notably, not every list and chart include titles and sub-titles presumably revealing agency deliberations or opinions. *See e.g.* UST_620-625; UST_630-631, ECF #83-2 at 1-6; #83-3 at 5-6.[3]

Without a sufficiently specific declaration, Plaintiffs have had to ferret through the records and make assumptions hampering their ability to reasonably and meaningfully dispute Treasury's withholdings. *King*, 830 F.2d at 218. The effect of treating records "within various exemption categories as a group, without referring to specific documents," *Church of Scientology* 30 F.3d at 231, has been to, *de facto,* shift the burden of proof to Plaintiffs. Accordingly, this Court should deny Defendant's motion for summary judgment on those grounds or, in the alternative, order Treasury to produce a proper *Vaughn* index and/or supplement their declarations containing a document-by-document or page-by-page description of the withheld materials. *See CLEAR*, 2022 WL 16636686 at *4.

## III.     The Challenged Records Are Improperly Withheld Under Exemption 6.

FOIA allows the federal government to withhold information that includes "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). "Similar files" should be construed broadly as to include "[g]overnment records on an individual which can be identified as applying to that individual." *Dep't of State v. Wash. Post Co*., 456 U.S. 595, 599 (1982).

Here, Plaintiffs seek the disclosure of names, professional background information, and employment history of individuals considered for the Fiscal Control Board. *See e.g.,* UST_606-

---

[3] Defendant also self-servingly interchanged or inverted its reliance on Exemption 5 and Exemption 6 depending on the challenged record. A detailed review of the records shows how Treasury interchanged its reliance on these exemptions, even if the documents are just an updated version of a previous one, making it difficult for Plaintiff to properly oppose them. *Compare* UST_1101, ECF #83-2 at 1, *with* UST_630-631, ECF #83-3 at 5-6.

0611, UST_616-617, UST_1190-1193, ECF #83-1 at 3-8; 13-14; ECF #83-5 at 8-11 (containing unqualified lists or charts with names and/or background information of potential candidates). Plaintiffs do not dispute that the records challenged contain personally identifying information of candidates to the Board. However, Exemption 6 does not create a blanket exemption for any files that have identifying information. Rather, the government must show that disclosure would constitute a "clearly unwarranted invasion of privacy." *Dep't of the Air Force v. Rose*, 425 U.S. 352, 371 (1976). The test for determining if such an unwarranted invasion of privacy exists requires balancing "the interests between the protection of an individual's private affairs from unnecessary public scrutiny, and the preservation of the public's right to governmental information." *Id.* at 372. Consistent with this purpose, "the strong presumption in favor of disclosure places the burden on the agency to justify the withholding of any requested documents." *Ray*, 502 U.S. at 173 (internal citations omitted).

The Supreme Court has ruled that a list of names and other identifying information is not inherently a threat to an individual's privacy because "whether disclosure of a list of names is a significant or a *de minimis* threat depends upon the characteristic(s) revealed by virtue of being on the particular list, and the consequences likely to ensue." *Id*. at 176 n. 12 (internal citations and quotation marks omitted). The purpose of Exemption 6 is "to protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information." *Wash. Post Co.*, 456 U.S at 599. Defendant relies on *Media LLC v. Dep't of Agriculture*, 515 F.3d 1224 (D.C. Cir. 2008) to propose that an individual's privacy interest need only be more than *de minimis* to be protected under the exemption automatically. *See* Def. MOL at 21, ECF #82 at 27. However, *Media LLC* further indicates that "a privacy interest may be substantial—more than *de minimis*—and yet be insufficient to overcome the public interest in disclosure." *Media LLC*, 515

9

F.3d at 1230. Yet, if the requested information "open[s] agency action to public scrutiny," then it must be made public—irrespective of whether there is a substantial private interest involved. *Associated Press v. DOD*, 554 F.3d 274, 293 (2d Cir. 2009).

Additionally, a substantial privacy interest may be overridden when disclosure would "contribute significantly to the public understanding of the operations or activities of the government." *Tomscha v. GSA*, 158 Fed. Appx. 329, 331 (2d Cir. 2005) (citations omitted). As explained below, there is a significant public interest in disclosing the records requested that overrides any privacy interest candidates for Board appointments may possibly have.[4]

### A. The Privacy Interest in the Names, Biographical Information, and Employment History of Board Candidates is *De Minimis*.

Defendant makes the overbroad and conclusory argument that the information sought by the Plaintiffs is "similar to what may be found in a personnel file insofar as is akin to performance evaluations," Dickerman Decl. ¶65, ECF #83 at 22, but the curricula vitae of Board candidates are not personnel records of employees. Even if the Board candidates' curricula vitae constitute "personnel records," under *Wash. Post Co.* this information is more akin to the employment history and other personal information contained in personnel files, which are not highly personal and must be disclosed.[5]

"[N]ames and other identifying information do not always present a significant threat to an individual's privacy interest." *Wood*, 432 F.3d at 88. Indeed, several cases on point have required disclosure of resumes of unsuccessful job candidates so long as certain private information such

---

[4] Plaintiffs hereby withdraw challenges to redactions in records that contain the names of low-level Treasury employees who did not play a substantive role in the selection of Board members.

[5] Defendant has provided no legal authority to sustain that curricula vitae and other employment history of candidates to a statutory board—not individuals seeking gainful employment—are the same as the information contained in personnel records of employees.

as home addresses are redacted. For example, in *Physicians Committee for Resp. Medicine v. Glickman*, 117 F. Supp. 2d 1 (D.D.C. 2000), the court held that names and curricula vitae of individuals nominated for a government advisory committee were not properly exempt from disclosure, finding "the privacy interests of the nonappointed applicants to be minimal." *Id.* at 6. Indeed, other than "personal data such as home addresses, telephone numbers, email addresses, and social security numbers . . . information in a C.V. is ordinarily written down precisely so that it *will* be displayed." *Id.* (emphasis in original). Similarly, in *Tokar v. Dep't. of Just.* the court held that Exemption 6 did not protect the names of nominees not selected to be corporate monitors because "the release of even this small amount of information will serve the public interest, to an extent that outweighs the candidates for these lucrative positions' interest in keeping their identities secret." *Tokar v. Dep't. of Just.,* 304 F. Supp. 3d 81, 98 (D.D.C. 2018). The same standard and logic should apply here with respect to candidates to the Fiscal Control Board and the records should be disclosed.

Defendant deems Plaintiffs' interest in the records of unsuccessful Board candidates "slight," and relying on *Core v. U.S. Postal Service,* 730 F.2d 946, 949 (4th Cir. 1984), mischaracterizes Plaintiffs' Request as interested in "evaluating the people who were appointed." Def. MOL at 23, ECF #82 at 29. Contrary to the facts in *Core,* where the stated public interest was to evaluate the competency of selected candidates, Plaintiffs' interest in the withheld records includes assessing the qualifications of all potential Board candidates regardless of whether they were selected or not.

**B.  Whether Individuals Knew They Were Considered for Appointment Is Irrelevant.**

Defendant contends that the privacy interest implicated by disclosing the qualifications of non-selected Board candidates outweighs any public interest in that information, "especially given

that some candidates might never have known they were considered," Def. MOL at 23, ECF #82 at 29, and suggests that lack of knowledge of being considered triggers a higher privacy interest. Defendant offers no legal authority to sustain this nebulous argument and further fails to state how many of the "more than 115 potential candidates . . . might have never known they were considered." *Id.* at 4; at 10. This assertion begs the questions: How many knew? How many did not know? Did 100 candidates know and 15 did not? Given the number of candidates considered, it is hard to identify the unwarranted invasion of privacy that disclosure would cause. For these reasons, particularly the lack of legal authority to support a different standard of privacy amongst unsuccessful Board candidates, Plaintiffs ask this Court to disregard this argument.

## C. Assessments of Board Candidates' Professional Background and Qualifications Are Different from Performance Evaluations.

The Defendant argues that Treasury staff's assessments of Board candidates' professional history and qualifications are "akin to performance evaluations or other types of candid employee evaluations." Dickerman Decl. ¶65, ECF #83 at 22. Defendant also fails to provide a legal authority for this conclusory statement. Board candidates are not employees of the Treasury and, ultimately, selected Board members are not either. Much to the contrary, the U.S. Supreme Court reiterated that the Board is "part of the local Puerto Rican government" with "powers [that are] backed by Puerto Rican, not federal, law," that it "reli[es] on local laws" and that it "acts not on behalf of the United States, but on behalf of, and in the interest of, Puerto Rico." *Aurelius Inv., LLC,* 140 S.Ct. at 1661-63. Treasury officials are not supervisors completing performance evaluations or fellow employees conducting "candid employee evaluations." Dickerman Decl. ¶65, ECF #83 at 22. There is no employer-employee relationship, particularly when "[t]he views of mid-level Treasury employees might not have even reached the President, and . . . might not correspond to the

President's reasons for selecting (or not selecting) a particular candidate." Def. MOL at 23-24, ECF #82 at 29-30. There is no equivalent.

The government relies on *Wisdom v. United States Trustee Program,* 232 F. Supp. 3d 97 (D.D.C. 2017) and *FLRA v. Dep't of Commerce,* 962 F.2d 1055 (D.C. Cir. 1992) for the proposition that Board candidates' employment history carry the same substantial privacy interest as a supervisor's evaluation of an employee's job performance. Def. MOL at 20-24, ECF #82 at 26-30. The facts of these cases are highly distinguishable. *Wisdom* involved a request for actual employment evaluations of an individual's former bankruptcy trustee against whom he initiated adversary proceedings. "The fact is that these records contain evaluations of [trustee's] work performance by his supervisor, which were created and held by the government." *Wisdom,* 232 F. Supp. at 126. The Court ruled against disclosure, finding the trustee had a substantial privacy interest in his performance evaluations "given the number of complaints about [the trustee's] demeanor . . . many of the records might contain information that would be personally embarrassing to him." *Id.*[6]

Similarly, in *FLRA v. Dep't of Commerce* a labor union sought employment ratings of its members, including the names of employees receiving outstanding or commendable ratings, which the Court found were protected by a substantial privacy interest because "[d]isclosure even of favorable information may well embarrass an individual or incite jealousy in his or her coworkers." *FLRA*, 962 F.2d at 1059 (quoting *Ripskis v. HUD,* 746 F.2d 1, 3 (D.C. Cir.1984) (internal quotation

---

[6] To the extent the redacted documents contain personal information other than the names of Board candidates, their employment history, and professional qualifications, Plaintiffs do not challenge the redaction of other personally identifying information. In the progressive narrowing of the FOIA request, Plaintiffs previously withdrew requests for financial disclosures as well as conflict of interest forms and information.

marks omitted) (opining that release of favorable ratings information would likely "spur unhealthy comparisons among HUD employees and thus breed discord in the workplace").

But information about already-employed individuals is not what Plaintiffs seek here. Lists of names and descriptions of Board candidates by Treasury and White House staff do not contain performance evaluations by the candidates' former or current employers or labor unions, and no substantial privacy interest protects them.

### D. Public Knowledge that an Individual Was Considered for the Fiscal Control Board Is Irrelevant and Harmless.

The Treasury is grasping at straws by stating that "[d]isclosing the names and other personal information of individuals . . . identified as potential Board candidates . . . would potentially subject them to reputational harm" because the Board is "controversial and unpopular in Puerto Rico." Def. MOL at 21-22, ECF #82 at 27-28. Defendant claims also that disclosing such information could lead to "injury and embarrassment," *Id*., yet fails to describe in any level of detail specific examples of consequences or realistic probabilities that these harmful outcomes may ensue if the records are disclosed.

Indeed, throughout the course of this litigation, Defendant has, in fact, disclosed records of candidates who were selected, and even of two candidates unselected. *See* UST_604-605, ECF #83-1 (releasing the name of Robert "Bob" Kurtter as a potential, yet unselected Board candidate); UST_1294-1295; ECF #83-10 at 1-2 (releasing the name of Sergio M. Marxuach as a potential, yet unselected Board candidate). Defendant is intent on protecting the alleged privacy interests of unselected candidates, yet again offers no legal authority to sustain a protectable distinction. Courts have held that "[t]he loss of privacy involved in disclosing the identities of all applicants is minimal; it is only the fact of rejection that raises the possibility of an invasion of privacy." *Kurzon*

14

*v. Dep't of Health and Human Services,* 649 F. 2d 65, 69 (1st Cir. 1981). Yet the "mere possibility that the release of information could potentially lead to harassment is not evidence of a 'real' threat of harassment." *Adelante Ala. Worker Ctr. v. Dep't of Homeland Sec.*, 376 F. Supp. 3d 345, 367 (S.D.N.Y. 2019). In any case, "the asserted stigma of rejection is significantly diluted when shared among approximately 140 people." *Physicians Comm.*, 117 F. Supp. 2d at 6.

More than a "speculative assertion" of harm, such as Defendant raises here, is required to assert a privacy interest because "Exemption 6 was directed at threats to privacy interests more palpable than mere possibilities." *ACLU v. Dep't of Just.*, 563 F. Supp. 3d 183, 194 (S.D.N.Y. 2021) (citations omitted). Defendant's defense is speculative because it has failed to provide any legal authority to support its allegation that public knowledge of an individual's consideration for the Fiscal Control Board is likely to lead to reputational harm, embarrassment, or harassment. Regardless, "the focus, in assessing a claim under Exemption 6, must be solely upon what the requested information *reveals*, not upon what it might lead to." *Associated Press v. U.S. Dep't of Def.*, 554 F.3d 274, 292 (2d Cir. 2009) (citations omitted) (emphasis in original).

### E. Any Possible Substantial Privacy Interest in Board Candidates' Names, Biographical Information, and Employment History is Outweighed by the Public Interest in Disclosure.

Information related to the creation of the Board is of utmost interest and importance to the people of Puerto Rico. As argued above, any privacy interest Board candidates may have in their names, biographical information, employment history, and qualifications is *de minimis*. Even if this Court is persuaded that a substantial privacy interest exists in the records requested, "unless the invasion of privacy is 'clearly unwarranted,' the public interest in disclosure must prevail." *Ray*, 502 U.S. 164, 177-78 (internal citations omitted).

As ruled in *Tokar*, the names of unsuccessful nominees to be corporate monitors, among others, were not protected under Exemption 6 since "the release of even this small amount of information will serve the public interest, to an extent that outweighs the candidates for these lucrative positions' interest in keeping their identities secret." *Tokar*, 304 F. Supp. 3d at 98. The court there credited the plaintiff's explanation that "by evaluating who was nominated to be a monitor and who the agency did not ultimately choose, he will be able to learn about the inner workings of the selection process which is now cloaked in secrecy, outside of the supervision of any courts." *Id.* Plaintiffs' case is no different. The appointment process of Board candidates is also cloaked in secrecy. The people of Puerto Rico are in the dark as to how the Treasury provide guidance to the President regarding the Fiscal Control Board appointments, nor which candidates were rejected and why. Individuals outside of the government, including labor unions, and creditors, recommended candidates for consideration, and the people of Puerto Rico have an interest in knowing whether creditors were favored over other stakeholders, Valentín Decl. ¶36, as well as whether the selection and appointment process was fair and representative of the people's interests and needs or skewed *ab initio* to support candidates with similar interests and policy views. *Id.* ¶37.

The facts of this case are similar to those in *Physicians Committee*, where "[t]he asserted public interest in disclosure is to understand the agency's selection process. Knowing who was selected and who was not, and learning their qualifications and affiliations, would advance that public interest." *Physicians Committee*, 117 F. Supp. 2d at 6. Releasing the withheld records will serve the interest of the people of Puerto Rico, who had no say during this powerful entity's appointment process, Valentín Decl. ¶¶18; 34, to understand how the federal government works in the execution of the PROMESA, in particular, the vetting and selection process of Board

candidates. *Id.* ¶32. Plaintiffs seek this information so the people impacted by the Fiscal Control Board's existence can assess its composition and its effect on the Board's widespread budget cuts to government agencies, municipalities, and public higher education, *Id.* ¶24. Moreover, there is a public interest in assessing potential conflicts of interest between Board candidates and firms and consultants that have worked on the debt-restructuring process, *Id.* ¶30. Releasing these records will also shed light on the federal government's process for creating fiscal control boards, particularly under PROMESA, which applies to all U.S. Territories. *Id.* ¶41. This public interest overrides any privacy interest Board candidates may be deemed to have.

## IV. The Challenged Records Are Improperly Withheld Under Exemption 5.

Treasury invokes Exemption 5 on three different grounds. First, it claims that the deliberative process privilege applies to the "biographical or personal information" of unselected candidates, including their names, background information summaries, and apparent opinions made of them. Def. MOL at 6-7, ECF #82 at 12-13. Second, it invokes the attorney-client privilege in one document that may well contain segregable information. *Id.* at 7, ECF #82 at 13. Third, it relies on the presidential communications privilege to protect certain emails and charts which also include the names and background information of candidates to the Board yet fails to demonstrate that it applies to the authors of these documents. *Id.* Plaintiffs address each of these assertions in turn.

### A. The Deliberative Process Privilege Does Not Apply to Names and Factual Background Summaries.

To properly withhold records pursuant to Exemption 5's deliberative process privilege, the government must prove that a document is both "predecisional and deliberative." *Nat'l Imm. Project of the Nat'l Lawyers Guild v. Dep't of Homeland Sec.*, 868 F. Supp. 2d 284, 290 (S.D.N.Y. 2012) (quoting *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 482 (2d Cir. 1999)). The inquiry

turns on two elements: (1) whether the document is "predecisional," i.e. "prepared in order to assist an agency decisionmaker in arriving at [their] decision[;]" and (2) "deliberative," i.e. "actually . . . related to the process by which policies are formulated." *Brennan Ctr. for Justice at N.Y. Univ. Sch. of Law v. Dep't of Justice*, 697 F.3d 184, 194 (2d Cir. 2012) (citations omitted).

Moreover, "[i]n determining whether withheld information is deliberative, courts consider whether the information was purely factual, or whether it reflects the give-and-take of the consultative process." *Judicial Watch v. Dep't of State*, 875 F. Supp. 2d 37, 44 (D.D.C. 2012) (internal quotation marks and citations omitted) [hereinafter *Judicial Watch II*]; *see also Hopkins v. U.S. Dep't of Hous. & Urb. Dev.*, 929 F.2d 81, 85 (2d Cir. 1991) ("[T]he privilege does not, as a general matter, extend to purely factual material"). "Purely factual information is not protected by [Exemption 5] because it would generally be available through discovery and would not call into question agency discussion." *Judicial Watch II*, 875 F.Supp. 2d at 44.

Courts have routinely found that a list of names is inherently factual and cannot be withheld from public disclosure under Exemption 5. *See e.g. White Coat Waste Project v. Dep't of Veterans Affs.*, 443 F. Supp. 3d 176 (D.D.C. 2020) (holding that the names of principal investigators on animal research protocols are indisputably facts not protected under Exemption 5); *People for the Am. Way Found. v. Nat'l Park Serv.*, 503 F. Supp. 2d 284 (D.D.C. 2007) (holding that the lists of names of potential experts for an upcoming event were factual and not covered under Exemption 5); *Ass'n of Nat. Advertisers, Inc. v. F.T.C.*, No. 75-1304, 1976 WL 1294 (D.D.C. July 15, 1976) (holding that the names and addresses of the outside expert consultants should be disclosed). *See also Pub. Citizen, Inc. v. Off. of Mgmt. & Budget*, 598 F.3d 865, 876 (D.C. Cir. 2010) (ordering the disclosure of a list of agency names that offered "no commentary whatsoever").

Furthermore, courts have also ruled that "summaries" concerning only factual information that do not reveal opinions or internal agency deliberations, must be disclosed. *See Petroleum Info. Corp. v. United States Dep't of the Interior*, 976 F.2d 1429, 1438 (D.C.Cir.1992) (holding that "transferring in full information contained in public source documents . . . is not so much to select and edit as to reorganize and repackage a mass of dispersed public information" and are not covered under Exemption 5). *See also Mapother v. Dep't of Just.*, 3 F.3d 1533, 1549 (D.C. Cir. 1993) (ruling that a section of a report written in the narrative form was "in substance an inventory, presented in chronological order" and not covered under Exemption 5).

## 1. The Challenged Records Are Not "Deliberative" But Rather Purely Factual.

Treasury has failed to properly justify its Exemption 5 withholdings, because most of the records withheld pursuant to this privilege are not "deliberative" in nature.[7] First, all the names of unselected Board candidates, on their own, regardless of any charts titles, sub-titles, and/or any purported ranking, must be disclosed because they are "purely factual" and do not reflect the give and take of the consultative process that Exemption 5 protects. *See White Coat Waste Project* 443 F. Supp. 3d at 189; *People for the Am. Way Found.*, 503 F. Supp. 2d at 302. Similarly, all summaries of these unselected candidates' factual, biographical, and professional backgrounds have been impermissibly redacted and must also be released given that they simply reorganize and repackage "a mass of dispersed public information." *Petroleum Info. Corp.,* 976 F.2d at 1438; *see also* Dickerman Decl. ¶48, ECF #83 at 18 ("The challenged records contain a selection of factual information drawn from publicly available records"). Although Defendant claims that certain

---

[7] Plaintiffs concede that most materials are "predecisional" insofar as they were created before the "ultimate" decisionmaker, in this case, the President, made his selection of Board members. However, certain records, specifically UST_1415-1420, do not meet the predecisional criteria. These records are Treasury decisionmakers' final selection of candidates, and this determination is not affected by whether subsequently a final decision was made. *People for the Am. Way Found*, 503 F. Supp. 2d at 298.

portions of these materials were obtained during candidates' vetting interviews, Plaintiffs have no way of knowing which lists and charts this assertion applies to because Treasury's declaration is insufficiently detailed in this regard.[8]

Without the benefit of a reasonably detailed declaration, and having had to carefully search through the records, Plaintiffs advance that a review of several unredacted portions related to the ultimately selected Board members fully supports this position and runs counter to Treasury's claim that these summaries contain subjective opinions. Def. MOL at 11, ECF #82 at 17. For example, the "Background on Candidate" section for selected members, Arthur González, José Ramón González, and Ana Matosantos at UST_1096 and UST_1100, ECF #83-4 at 3-7, are nothing more than "transferring in full information contained in public source documents" into a chart using the "narrative form." *Petroleum Info. Corp.*, 976 F.2d at 1438; *Mapother*, 3 F.3d at 1549. These released portions are the repackaging of the candidate's biographical, professional, and educational backgrounds from publicly available sources. *See Petroleum Info. Corp.,* 976 F.2d at 1438. Contrary to Defendant's claim, the sections regarding factual background information are not summaries that reveal the agency officials' subjective opinions nor contain anything about these candidates' "political views" or "personalities." Def. MOL at 11, ECF #82 at 17.[9]

Assuming the factual background information as to unselected candidates is similar or identical in nature to the released portions of selected candidates, then all portions of these records

---

[8] The Court should disregard this distinction because the declaration does not provide "an adequate foundation to review the soundness of the withholding." *King*, 830 F.2d at 218.

[9] This same logic applies to other background sections as to other selected candidates. *See e.g.* UST_1281-1282, ECF #83-7 at 1-2; UST_1419-1420, ECF #83-14 at 5.

have been improperly withheld under Exemption 5 and should be disclosed because they are non-deliberative and purely factual. *Judicial Watch*, 875 F.Supp. 2d at 44.[10]

### 2.   Alternatively, Defendant Must Reasonably Segregate All "Purely Factual" Portions of the Withheld Records.

FOIA mandates that "[a]ny reasonably segregable portion of a record shall be provided to any person . . . after deletion of the portions which are exempt under this subjection." 5 U.S.C. § 552(b). When a factual material is not "inextricably intertwined" with the policymaking recommendations, "reasonably segregable" portions are subject to disclosure." *Hopkins*, 929 F.2d at 85. An agency must "provide a segregability analysis that shows with reasonable specificity why the documents cannot be further segregated." *CLEAR*, 2022 WL 16636686 at *12 (internal quotation marks, alterations, and citations omitted). When assessing this specificity, "vague or conclusory declarations are insufficient to explain segregability." *Id.* at *12; *see also N.Y. Times. v. FBI*, 297 F. Supp. 3d 435, 443 n.8 (S.D.N.Y. 2017) (upholding the court's demand for a "line-by-line" segregability analysis).

If this Court is unpersuaded that most records withheld under Exemption 5 are not deliberative, in the alternative, then it should order Treasury to further segregate "purely factual" information in these records. *CLEAR*, 2022 WL 16636686 at *12. Contrary to Treasury's inadequately categorical descriptions, there are fundamental distinctions between these records that can be severable without compromising any presumptive judgment or deliberations made by

---

[10] Plaintiffs reserve their right to continue challenging any undisclosed records that do not squarely fall within the description of the records detailed above. Specifically, Plaintiffs are not waiving their challenge to other withheld information under Exemption 5 that has been classified as generally being "bodies of emails." As to records described as charts detailing a timeline proposal for completing the candidate selection process, i.e. UST_1184-1185, ECF #83-5 at 3-4, Plaintiffs argue that these records are also not "deliberative." *See Nat'l Day Laborer Org. Network v. United States Immigr. & Customs Enf't*, 486 F. Supp. 3d 669 (S.D.N.Y. 2020) (ruling that an implementation timeline was not protected by the deliberative process privilege).

the agency. *Church of Scientology* 30 F.3d at 231. Specifically, Defendant should, at a minimum, segregate and disclose the names and/or background information detailed in any lists, bodies of emails, and charts in which unselected Fiscal Control Board candidates were neither "qualified," organized in "tiers" or "ranked." *See e.g.* UST_606-0611; UST_616-617, ECF #83-1 at 3-8; 13-14; UST_1387, ECF #83-13 at 1; UST_1415-1420, ECF # 83-14 at 1-6.[11] These records are not "inextricably intertwined" with opinions or policymaking recommendations and portions of the records can be reasonably segregated and disclosed. *Hopkins*, 929 F.2d at 85. If for purposes of considering this segregability argument, the Court finds it helpful and efficient to demand that Defendant provide "line-by-line" analysis, Plaintiff does not oppose this. *See Elec. Priv. Info. Ctr. v. Dep't of Homeland Sec.*, 892 F. Supp. 2d 28, 43 (D.D.C. 2012).

### 3. Disclosing the Challenged Records Does Not Foreseeably Harm Any Interest Protected by the Deliberative Process Privilege.

Under the FOIA Improvement Act of 2016, an agency must also establish that it "reasonably foresees that disclosure would harm an interest protected by' [that] exemption." *Rosenberg v. Dep't of Def.*, 442 F. Supp. 3d 240, 256 (D.D.C. 2020) (quoting 5 U.S.C. § 552(a)(8)(A)(i)(I))). This criterion must follow "a focused, context-specific explanation" because a mere link between the withheld information and some foreseeable harm is no longer enough. *See Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 369-70 (D.C. Cir. 2021) (holding that the agency failed to demonstrate that it reasonably foresaw that disclosing factual materials would have harmed interests protected by FOIA exemptions). The agency must provide a "focused and concrete demonstration of why disclosure of the particular type of material" will cause foreseeable

---

[11] Referencing these specific records is not a waiver of Plaintiffs' challenge to any other records the Court deems to fit into these criteria.

harm "in the specific context of the agency action at issue." *Reps. Comm.*, 3 F.4th at 370. In other words, it "cannot merely state that disclosure could . . . adversely impair internal deliberation or chill inter-agency speech; it must argue that disclosure would have that effect in context." *Energy Policy Advocates v. Dep't of Just.,* No. 19-03307, 2023 WL 4198200, at *2 (D.D.C. June 27, 2023) (citing *Reps. Comm.* 3 F.4th at 369-70) (internal quotations marks omitted).

The Defendant has failed to establish how disclosing the challenged records would foreseeably harm the interest protected by Exemption 5 as it relates to the agency's limited role in carrying out PROMESA. Treasury has put forward "a series of boilerplate and generic assertions that release of any deliberative material would necessarily chill internal discussions," which are similar to those that the D.C. Circuit rejected in *Reps. Comm. for Freedom of the Press*, 3 F.4th at 369-70. Defendant's disclosure of the names and backgrounds of two unselected candidates provides the best example as to why releasing, at minimum, the names and background information of all unselected candidates would not hinder the free exchange for future appointments. During the parties' negotiations, Defendant unredacted the names of Robert "Bob" Kurtter and Sergio M. Marxuach who, according to the "context" of these documents, were potential candidates for the Board. *See* UST_604-604; UST_1294-1295, ECF #83-1 at 1-2; ECF #83-10 at 1-2. This begs the question: Why release the factual information of these unselected candidates and not the rest? There is simply no reasonable explanation for it. The Court should consider this affirmative disclosure as a clear indication that there is no foreseeable harm in releasing all remaining names and background information of unselected Board candidates. This action, combined with Defendant's generic assertions of harm, should move this Court to rule that Defendant has failed to meet the foreseeable harm standard. *Reps. Comm.*, 3 F.4th at 369-70.

23

**B. Defendants' Declaration is Insufficiently Specific to Support its Withholding Pursuant to the Attorney-Client Privilege, and any Names Referenced Should be Disclosed.**

The attorney-client privilege "protects communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal assistance." *Brennan*, 697 F.3d at 207. "When an attorney conveys to his client facts acquired from other persons or sources, those facts are not privileged." *Elec. Priv. Info. Ctr. v. Dep't of Just.*, 584 F. Supp. 2d 65, 79 (D.D.C. 2008) (citations omitted).

As put forward by Defendant, the withheld portion of UST_2862, ECF# 83-17, involves the White House Ethics Counsel asking Treasury's Assistant General Counsel what the agency's position is as to what PROMESA requires on a particular issue related to the Board. Def. MOL at 15, ECF #82 at 21. Plaintiffs do not dispute that this privilege has been properly invoked as to the advice provided. But if the redacted portions include or reference the name of one or more specific candidates, selected or unselected, to be a Board member, such names should be disclosed as they constitute factual information not covered by the privilege. *Elec. Priv. Info. Ctr.*, 584 F. Supp. 2d at 79.

**C. The Presidential Communications Privilege Applies Only to Communications Shared with Treasury Officials Within the Narrow Group of Protected Presidential Advisers.**

Treasury invokes the presidential communications privilege to protect a series of emails and charts with the names of backgrounds of candidates to the Board. *See e.g.* UST_2388-2400, ECF #83-15 at 1-13. The presidential communications privilege protects those "documents or other materials that reflect presidential decision-making and deliberations and that the President believes should remain confidential[.]" *In re Sealed Case*, 121 F.3d 729, 744 (D.C. Cir. 1997). The agency invoking the privilege on the President's behalf waives the privilege by the disclosure of

the otherwise privileged information to third parties. *See ACLU v. Dep't of Just.*, No. 15-1954, 2016 WL 889739, at *3 (S.D.N.Y. Mar. 4, 2016) (citing *In re Sealed*, 121 F.3d at 741). Specifically, "the transmittal of a document to persons who are unlikely to be in a position to give advice to the President waives the privilege." *ACLU v. Dep't of Def.,* 435 F. Supp. 3d 539 at 559 (2020) (citations omitted). Maintaining the privilege, therefore, requires keeping the information in a "circle [which] . . . has a narrow diameter." *Id.* Hence, the privilege does not generally "extend to staff outside the White House in executive branch agencies." *In re Sealed Case*, 121 F.3d at 752. There is a "hierarchy of presidential advisers such that the demands of the privilege become more attenuated the further away the advisers are from the President operationally." *Judicial Watch, Inc. v. Dep't of Just.*, 365 F.3d 1108, 1115 (D.C. Cir. 2004) [hereinafter *Judicial Watch III*].

Treasury has failed to properly establish that the withheld materials were not disclosed to third parties who are unlikely to be in a position to give advice to the President. Nowhere in its filings does Defendant justify that the Treasury officials copied in those communications, which are "staff outside the White House in executive branch agencies," *In re Sealed Case*, 121 F.3d at 752, are operationally close enough to the hierarchy of presidential advisers that can be protected under this privilege. *Judicial Watch III*, 365 F.3d at 1115.[12] Treasury should disclose the information or provide facts sufficient to show that these Treasury officials qualify as advisors whose communications can be protected.

---

[12] Plaintiffs further incorporate by reference every other argument developed earlier in the motion related to deliberative process privilege because most records withheld under the presidential communications privilege are similar, if not identical, to others withheld by the Defendant.

**CONCLUSION**

For the foregoing reasons, and those set forth in the accompanying declaration, Plaintiffs' cross-motion for summary judgment should be granted and Defendant's motion for summary judgment denied.

Dated: July 24, 2023
New York, New York

<table>
<tr><td><u>s/ Lía Fiol-Matta</u></td><td><u>/s/Carlos Ramos-Hernandez</u></td></tr>
<tr><td>LIA FIOL-MATTA</td><td>CARLOS RAMOS-HERNANDEZ</td></tr>
<tr><td>LatinoJustice PRLDEF</td><td>Centro de Periodismo Investigativo</td></tr>
<tr><td>475 Riverside Dr., Suite 1901</td><td>655 Calle McKinley, Apt. B</td></tr>
<tr><td>New York, NY 10115</td><td>San Juan, PR 00907</td></tr>
<tr><td>Tel. (212) 739-7582</td><td>Tel: (787) 457-5102</td></tr>
<tr><td>lfiol-matta@latinojustice.org</td><td>cframoshernandez@outlook.com</td></tr>
<tr><td></td><td><em>Pro Hac Vice</em></td></tr>
</table>