THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **CENTRO DE PERIODISMO INVESTIGATIVO, LATINOJUSTICE PRLDEF, and CENTER FOR CONSTITUTIONAL RIGHTS**<br><br>*Plaintiffs*,<br><br>vs.<br><br>**DEPARTMENT OF THE TREASURY**<br><br>*Defendant*. | Case No. 19-cv-4417 (JPO) |

## DECLARATION OF LUIS VALENTÍN ORTIZ

I, Luis Valentín Ortiz, declare as follows:

1. My name is Luis Valentín Ortiz and I am an investigative journalist for *Centro de Periodismo Investigativo* (CPI) in Puerto Rico, the lead plaintiff in this case, where I cover government and fiscal issues. Since 2015, I have been covering issues related to Puerto Rico's fiscal crisis, the enactment and implementation of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA") and the actions carried out by the Financial Oversight and Management Board ("Board" or "Fiscal Control Board").

2. CPI is a non-profit media organization focused on government transparency in Puerto Rico. CPI's mission is to strengthen and defend Puerto Rico's constitutional right to access public information via investigative reporting, journalist training, and freedom of information litigation. Since 2007, CPI has published over 350 reports and has established itself as a

key stakeholder in ensuring accountability in Puerto Rico's financial and debt restructuring process.[1]

3. I submit this declaration in support of the Plaintiffs' cross-motion for summary judgment and detail herein about my reporting on Puerto Rico's debt crisis, the enactment of PROMESA, the process for appointing the first members of the Board, and the Board's subsequent actions exercising its powers and implementing its policies.

4. The purpose of my declaration is to provide context for the case's factual background and to establish why the challenged records are essential to carry out CPI's investigative reporting and, more importantly, of immense public interest to the people of Puerto Rico and the United States. The records requested show the influence of different stakeholders (including creditor groups and labor unions) in the Board's selection, vetting, and appointment process, as well as who was considered (and who was not), the criteria discussed to vet candidates (or lack of), and potential conflicts of interest situations prior to and after the Board's establishment. The challenged records are a critical part of this chapter of Puerto Rico's history and its relationship with the United States; they tell the story of how the Board came into existence and shed light on the actions of the federal government regarding this issue.

5. The statements made in this declaration are based on personal knowledge and my experience as a journalist who has covered these issues for the past eight years.

6. I have reviewed the declaration of Michelle A. Dickerman that was filed in support of the U.S. Department of Treasury's Motion for Summary Judgment in this case. ECF #83.

**Puerto Rico's Fiscal Crisis and The Creation Of PROMESA**

---

[1] *Puerto Rico's Centro de Periodismo Investigativo wins Louis M. Lyons Award for Conscience and Integrity in Journalism at Harvard*, Nieman News (Dec. 19, 2019), https://tinyurl.com/2t4vv3h7.

7. During the summer of 2015, when Governor Alejandro García-Padilla announced that Puerto Rico's debt was not payable,[2] I was working at a news outlet that specialized in business and financial news, where I also covered issues related to Puerto Rico's fiscal crisis.

8. As a journalist, I became particularly interested in the government's actions to address this crisis such as pension reform, tax increases, and budget cuts across agencies and services. I also covered early negotiations between the Puerto Rico government and its creditors, as well as legislative and lobbying efforts in Congress that led to the enactment of PROMESA.

9. At this juncture, the federal government started working on a response to Puerto Rico's fiscal crisis, which included a dedicated team in the U.S. Department of the Treasury ("U.S. Treasury") "to closely monitor the crisis and provide financial expertise" to Puerto Rico government officials.[3] In October 2015, on behalf of the Obama Administration, the U.S. Treasury called upon Congress to provide the Puerto Rico government with access to a debt-restructuring process under federal law, along with "independent fiscal oversight while respecting Puerto Rico's autonomy."[4]

10. In April 2016, the Republican-led House Natural Resources Committee unveiled H.R. 4900, a starting point for what eventually became PROMESA. The bill called for the establishment of an "oversight board," while granting access to a federal court-ordered,

---

[2] Michael Corkery & Mary Williams Walsh, *Puerto Rico's Governor Says Island's Debts Are 'Not Payable,'* The New York Times (June 28, 2015), https://tinyurl.com/4knckr4z.

[3] ADDRESSING PUERTO RICO'S ECONOMIC AND FISCAL CRISIS AND CREATING A PATH TO RECOVERY: ROADMAP FOR CONGRESSIONAL ACTION, Obama White House Archives 2 (Oct. 21, 2015), https://tinyurl.com/z5zwnf99. The U.S. Treasury declaration also recognizes that the agency was "deeply involved in drafting PROMESA." Dickerman Decl. ¶7.

[4] *Id.* at 3.

debt-restructuring process. According to the House Natural Resources Committee, the framework for PROMESA was "developed through broad-based collaboration with Members of Congress in both parties, the U.S. Department of the Treasury, a range of economic, business and market stakeholders, and with engagement from Puerto Rico's elected leadership."[5]

11. The introduction of PROMESA brought about extensive public discussion and lobbying efforts.[6] Politicians in San Juan and Washington, D.C. opposed PROMESA because of the undemocratic and colonial nature of the Board, whose members would not be elected by Puerto Rico voters. Labor unions and civil organizations raised flags over the negative effects the Board's actions would have on Puerto Rico residents, including spending cuts to public services and pensions, as well as reductions in-work benefits. Various Puerto Rico creditor groups and conservative organizations also opposed PROMESA, calling it a bailout of Puerto Rico at the expense of U.S. taxpayers, that would also undermine creditor rights and the U.S. municipal bond market.

12. The Obama Administration, joined by Gov. García-Padilla and then Resident Commissioner Pedro Pierluisi, current Governor of Puerto Rico, led the support for PROMESA and intensely lobbied Congress to have the legislation approved. Their efforts to swiftly approve PROMESA centered around a "humanitarian crisis" in Puerto Rico amid looming debt service payments that, if paid, would leave the government without enough money to provide essential services such as health and public safety.[7] The U.S. Supreme

---

[5] *House Committee on Natural Resources Releases Puerto Rico Discussion Draft* (Press Release) (Mar. 29, 2016), https://tinyurl.com/yc3j4dmf.

[6] José A. Delgado, *Last-Minute Intense Lobbying*, El Nuevo Día (June 8, 2016), https://tinyurl.com/4nnzpvas.

[7] *Jack Lew urges Senate to act on Puerto Rico debt*, Reuters (June 27, 2016), https://tinyurl.com/2p7xbcab.

Court had also recently struck down the *Puerto Rico Corporation Debt Enforcement and Recovery Act*, a local bankruptcy law approved by the Puerto Rico Legislature, leaving the archipelago without protection from creditor lawsuits.[8]

13. On June 29, 2016, Congress approved PROMESA with bipartisan support, as did the House earlier that month. On June 30, 2016, President Obama signed PROMESA into law.[9]

14. Under PROMESA, Puerto Rico has access to debt-restructuring mechanisms and protection from creditor actions, while establishing a strong control board to take over fiscal management. It states that the Board is "an entity within" the Puerto Rico government, 48 U.S.C. § 2121 (c)(1), yet not subject to Puerto Rico law that is "inconsistent with" PROMESA and to oversight by local government entities. *Id.* §§ 2103; 2128 (a)(1)(2). PROMESA empowers the Board to have the last word in approving fiscal plans and budgets, thus giving the entity a strong grip over policy measures and spending priorities. *Id.* §§ 2141–2144. For example, if the Board, in its own discretion, deems a local law to be "inconsistent with" a fiscal plan or budget, it can prevent its enforcement. *Id.* § 2144

15. Despite the broad powers given to the Board under PROMESA, its name — the "Financial Oversight and Management Board" — leaves out the word "control," which is how people, and even federal and local officials,[10] have referred to it given its broad budgetary and fiscal powers over the elected government. It is CPI's editorial position to always refer to

---

[8] *Puerto Rico v. Franklin California Tax-Free Tr.*, 579 U.S. 115 (2016).

[9] A revised version of PROMESA was introduced in May 2016 as H.R. 5278 and S.2328, the latter of which was signed into law by President Obama.

[10] *See e.g. Velázquez Leads Four Members of Congress in Filing Amicus Brief in Case Against Puerto Rico's Fiscal Control Board* (Nov. 2, 2021), https://tinyurl.com/h3vjk6mb; *A Fiscal Control Board That Represents Us All*, El Nuevo Día (Apr. 13, 2016), https://tinyurl.com/5hbehrs7.

5

the Board in its reporting as the "Fiscal Control Board," not simply the "Oversight Board," to avoid euphemisms.

16. Aside from the procedural and technical aspects mentioned by the U.S. Treasury's declaration,[11] for an individual to be appointed as a member of the Board, PROMESA requires "knowledge and expertise in finance, municipal bond markets, management, law, or the organization or operation of business or government." 48 U.S.C. § 2121 (f)(1). The law also states that Puerto Rico public officers, candidates for elected office, and former elected officials were ineligible for serving on the Board. *Id.* § 2121 (f)(2).

17. Following these minimal criteria, the President then appoints all seven members, six of which are selected from candidate lists submitted by Congress without Senate confirmation. *Id.* § 2121(e)(2)(E).

18. As PROMESA's eligibility requirements show, the law fails to consider any participation from the people of Puerto Rico or its representatives during the appointment process despite the extensive authority the Board has over the island's affairs. Members of the Board are appointed by the U.S. President, in coordination with Congress, none of which are elected by Puerto Rico residents.

19. When PROMESA was approved, there was a level of positive support on the island. In addition to the García-Padilla administration, other stakeholders, such as private sector organizations[12] and the editorial board of the largest news outlet, El Nuevo Día,[13] publicly

---

[11] Dickerman Decl. ¶¶4-5.

[12] *Letter to the House Committee on Natural Resources by Coalición del Sector Privado* (June 1, 2016), https://tinyurl.com/4vxtmw4x.

[13] *Editorial: Support for the Board to Overcome Fiscal Challenges*, El Nuevo Día (July 16, 2016), https://tinyurl.com/yu8f82vn.

supported the Board. An early poll conducted by El Nuevo Día showed that more than 40% of respondents supported the establishment of the Board under PROMESA.[14]

20. During this period, while working at a finance-specialized news outlet, I covered the passage of PROMESA and lobbying efforts by stakeholders, some of which led to changes in the proposed legislation prior to its approval. Once members were appointed, I covered the establishment of the Board operations, from the selection of offices to the approval of internal policies and the engagement of contractors.

21. The selection, vetting, and appointment process of the Board members was confidential and started weeks before PROMESA was approved.[15] Various news outlets in Puerto Rico and the U.S., including CPI, reported on potential candidates for the Board and their fiscal policy-oriented views, with names that range from Puerto Rico businessmen and former public officials to restructuring and banking experts and former U.S. state elected officials.[16]

22. As confirmed by portions of the challenged records, Treasury personnel, in coordination with the Obama White House, led the search and vetting of potential members for the Board. Several versions of candidate lists were exchanged among them.

---

[14] *Island Shows Divided Opinion about the Board,* El Nuevo Día (June 16, 2016), https://tinyurl.com/5n8rze4b.

[15] Joanisabel González, *Urgency to Assemble the Board*, El Nuevo Día (July 1, 2016), https://tinyurl.com/jt9dyvad. This assertion is also confirmed by some unredacted portions of the challenged records. *See e.g.* UST_604-605; UST_1387.

[16] Jack Casey, *Who Might Serve on the PROMESA Oversight Board,* The Bond Buyer, (June 17, 2016) https://tinyurl.com/h4rnp7ab; Joel Cintrón Arbasetti & Carla Minet, *Ex presidentes del BGF, fondos buitre, directivos de Walmart y banqueros en listas que pronostican miembros de la Junta de Control Fisca*l, Centro de Periodismo Investigativo (July 1, 2016), (reporting in Spanish), https://tinyurl.com/yey48xaj.

23. On August 31, 2016, President Obama announced the appointment of the Board's seven members: Ana Matosantos, José Ramón González, Arthur González, José Carrión, David Skeel, Andrew Biggs, and Carlos García.[17]

### The Board's Actions and CPI's Watchdog Role

24. As a reporter, I closely followed the Board's first actions once it became operational. In March 2017, the Board approved a fiscal plan that called for budget cuts in government agencies, municipalities, and the University of Puerto Rico, a public-school shutdown program,[18] and the "right-sizing," or reduction, of government, among other austerity measures. In May 2017, the Board filed for bankruptcy protection under Title III of PROMESA on behalf of the Puerto Rico government. In late June 2017, the board imposed its version of the government budget, which included $951 million in budget cuts to agencies, municipalities, and the University of Puerto Rico.[19] In August 2017, the Board sued the Puerto Rico government in federal court to force the implementation of a furlough program for public workers and cuts to pension benefits.[20] In November 2017, in the aftermath of Hurricane María, the Board sought to take over the day-to-day administration of the Puerto Rico Electric Power Authority through the appointment of a "chief transformation officer."[21]

---

[17] *President Obama Announces Appointment of Seven Individuals to Financial Oversight and Management Board for Puerto Rico*, The White House, President Barack Obama (Aug. 31, 2016), https://tinyurl.com/5cmxan32.

[18] Frances Robles, *Puerto Rico's Debt Crisis Claims Another Casualty: Its Schools*, New York Times (May 10, 2017), https://tinyurl.com/ytdm2dav.

[19] *Financial Oversight and Management Board for Puerto Rico FY 18 Budget* (June 30, 2017), *available at* https://tinyurl.com/ypk9vmjh.

[20] Daniel Bases, *Puerto Rico oversight board orders furloughs, governor defiant*, Reuters (Aug. 4, 2017) https://tinyurl.com/3t9wdpmj. The Board dismissed its lawsuit following the disaster of Hurricane María.

[21] Jonathan Allen, Keri Geiger & Suzanne Gamboa, *Puerto Rico's frantic search for someone to turn on the lights*, NBC News (Oct. 27, 2017) https://tinyurl.com/ychx9sxx.

8

25. After Judge Laura Taylor Swain blocked the Board's takeover of PREPA,[22] the Board worked toward the revision of the government fiscal plans, following hurricanes Irma and Maria. It is at this juncture that I started working at CPI in January 2018.

26. As part of my work for CPI, I have written and collaborated, both in Spanish and English,[23] on more than 30 news articles covering everything related to Puerto Rico's fiscal crisis and debt restructuring process, the creation, implementation, and effects of PROMESA, and the Board's actions in exercising its powers.

27. I include and detail below a selection of my coverage that can help to better understand the Board's broad power and actions, and how they have affected the people of Puerto Rico:

   a. With Omaya Sosa, *The Fantasy of the Fiscal Plan for Puerto Rico* (Feb. 20, 2018),[24] on how the Board's economic projections in the new fiscal plan fail to follow previous experiences of places affected by natural disasters, such as hurricane María.

   b. *Puerto Rico Debt Audit Drags on as Creditor Negotiations Heat up*, (June 1, 2018),[25] on how the Board's audit of Puerto Rico's debt was still ongoing almost one year after it was announced.

   c. *Puerto Rico's Fiscal Control Board: Parallel government full of lawyers and consultants* (Aug. 1, 2018),[26] on the significant amount of fees received by

---

[22] Daniel Bases, *U.S. judge denies request for outsider to oversee Puerto Rico's PREPA*, Reuters (Nov. 13, 2017) https://tinyurl.com/mwt445nw.

[23] For purposes of this declaration, I am mostly referencing reporting produced in the English language.

[24] Omaya Sosa Pascual & Luis J. Valentín Ortiz, *The Fantasy of the Fiscal Plan for Puerto Rico*, Centro de Periodismo Investigativo (Feb. 20, 2018), https://tinyurl.com/5ss84wrk.

[25] Luis J. Valentín Ortiz, *Puerto Rico Debt Audit Drags on as Creditor Negotiations Heat up*, Centro de Periodismo Investigativo (June 11, 2018), https://tinyurl.com/5t38krep.

[26] Luis J. Valentín Ortiz, *Puerto Rico's Fiscal Control Board: Parallel Government Full of Lawyers and Consultants*, Centro de Periodismo Investigativo, (Aug. 1, 2018), https://tinyurl.com/mufzpy3j.

      consultants and lawyers of the Board and the high volume of work performed by these contractors including the preparation and implementation of fiscal plans and budgets, and debt-restructuring efforts.

   d. With Joel Cintrón Arbasetti, *Emails Expose Federal Gov't Influence Over Puerto Rico's Fiscal Board* (Nov. 28, 2018),[27] on the level of influence and oversight exercised from the U.S. Treasury and various congressional offices during the establishment and early days of the Board.

   e. *Puerto Rico Fiscal Board Fights For Secrecy*, (Nov. 29, 2018),[28] on the Board's actions in federal court to avoid compliance with a federal judge's order to produce public documents requested by the CPI.

   f. With Andrew Rice for New York Magazine-Intelligencer, *McKinsey is running Puerto Rico - and getting paid millions to do it,* Intelligencer (Apr. 17, 2019),[29] on the work and responsibilities of McKinsey, one of the Board's main contractors that has led the drafting process of fiscal plans and budgets.

   g. *Rosselló Administration delayed in restructuring Puerto Rico Government,* (May 28, 2019),[30] on how the elected government had failed to implement the majority of measures and reforms required in the approved fiscal plan.

---

[27] Luis J. Valentín Ortiz & Joel Cintrón Arbasetti, *E-mails Expose Federal Gov't Influence Over Puerto Rico's Fiscal Board*, Centro de Periodismo Investigativo, (Nov. 28, 2018), https://tinyurl.com/29k5j726.

[28] Luis J. Valentín Ortiz, *Puerto Rico Fiscal Board Fights for Secrecy*, Centro de Periodismo Investigativo, (Nov. 29, 2018), https://tinyurl.com/ykyhaa9w.

[29] Andrew Rice & Luis Valentin Ortiz, *The McKinsey Way to Save an Island Why is a bankrupt Puerto Rico spending more than a billion dollars on expert advice?*, New York Magazine-Intelligencer (Apr. 17, 2019) https://tinyurl.com/5bzkn2p9.

[30] Luis J. Valentín Ortiz, *Roselló administration delayed in restructuring Puerto Rico government*, Centro de Periodismo Investigativo (May 28, 2019) https://tinyurl.com/2x253h3u.

28. As these stories show, the Board has sought to fully exercise its powers under PROMESA. Furthermore, the Board has repeatedly enforced its version of the government budget and fiscal plans, while rejecting the elected government's proposals.[31] The Board has thoroughly controlled government spending, by revising, conditioning, and, in many instances, rejecting agency requests to redirect or use public funds, for example, denying the government's plans to use emergency funds to stabilize electricity rates and repair the energy grid.[32] The Board has blocked Puerto Rico's Governor and Legislature from enacting or implementing Puerto Rico local statutes, policies, or rules that have, in the Board's judgment, "impair[ed] or defeat[ed] the purposes" of PROMESA under 48 U.S.C. § 2128(a)(2). For example, the Board has forced the Puerto Rico government to nullify local laws involving pensions, health insurance, and workers' benefits.[33]

29. This "awkward power-sharing arrangement,"[34] as coined by Judge Swain, between the elected government and the Board, has affected agency operations and essential services.

30. According to court filings,[35] more than $1.1 billion — and counting — of Puerto Rico taxpayers' money has been spent on lawyers and advisers that have worked on the restructuring process and been instrumental in the drawing and implementation of fiscal

---

[31] Luis Valentín Ortiz, *Puerto Rico's revised fiscal plan approved over government opposition*, Reuters, (Oct. 23, 2018) https://tinyurl.com/2f64ch7s; Dánica Coto, *Puerto Rico board approves budget as legislators quibble*, The Associated Press, (July 1, 2022), https://tinyurl.com/3dbym3f6.

[32] *Fiscal Board Denies Gov't Request for $200 Million from Emergency*, San Juan Daily Star (Mar. 18, 2022), https://bit.ly/3Wp3eh1; *Fiscal Board Nixes Use of Emergency Reserve to Stabilize Energy Grid,* San Juan Daily Star (Dec. 16, 2022), https://tinyurl.com/mw4ymhdd.

[33] *See e.g.*, Gloria Ruiz Kuilan, *Labor Reform: Litigation Between the Board and the Puerto Rico Government Seems Unavoidable*, El Nuevo Día (Aug. 30, 2022), https://tinyurl.com/43jrtd8u;Jim Wyss, *Puerto Rico Oversight Board Sues To Stop New Pension Benefits*, Bloomberg.com (Dec. 21, 2021), https://tinyurl.com/3b26re9h; *Fiscal Board Sues To Halt Implementation of Retirement Law*, San Juan Daily Star (July 6, 2021), https://tinyurl.com/ycyvumzu.

[34] Alvin Baez, *Puerto Rico bankruptcy judge upholds oversight board powers over island government*, Reuters (Aug. 8, 2018), https://tinyurl.com/563rzcb9.

[35] *In re Fin. Oversight and Mgt. Bd. for Puerto Rico*, Case No. 17-BK-3283 (LTS), ECF #24383 ("Fee Examiner's Report On Uncontested Professional Fee Matters For Consideration In Connection With The June 8, 2023, Omnibus Hearing").

and austerity measures. Some of these firms and consultants have been flagged for potential conflicts of interest, as is the case of the consulting firm McKinsey.[36] Conflict of interest issues among advisers and parties with interest in the Puerto Rico restructuring process led Congress in 2021 to enact the *Puerto Rico Recovery Accuracy in Disclosure Act*, which increases disclosure requirements among those involved in the Title III restructuring cases. 48 U.S.C. § 2178.

31. According to records CPI obtained following litigation under Puerto Rico's right to information, recognized by the Puerto Rico Supreme Court in the landmark decision of *Soto v. Srio de Justicia* in 1982,[37] multiple communications show how the federal government has exerted enormous power and influence on the Board. Following the creation of PROMESA and the Board, for the past six years, CPI has engaged in public records litigation to oversee and shed light on the Board's actions.[38] In the same spirit and similar to those efforts, CPI, alongside LatinoJustice PRLDEF and the Center for Constitutional Rights, submitted the FOIA request on January 27, 2017, which led to the present lawsuit.

### The Challenged Records' Public Interest

32. As referenced in the Complaint, CPI sought these records because there were and still are: (1) public concerns about the lack of transparency and accountability during the Board's

---

[36] Andrew Rice & Luis Valentin Ortiz, *The McKinsey Way to Save an Island Why is a bankrupt Puerto Rico spending more than a billion dollars on expert advice?*, New York Magazine-Intelligencer (Apr. 17, 2019) https://tinyurl.com/5bzkn2p9.

[37] *Soto v. Srio. de Justicia*, 112 D.P.R. 477 (1982), 12 P.R. Offic. Trans. 597 (P.R. 1982).

[38] *See for example, Fin. Oversight and Mgt. Bd. for Puerto Rico v. Centro de Periodismo Investigativo, Inc.*, 143 S.Ct. 1176 (May 11, 2023); *Centro de Periodismo Investigativo, Inc. v. Rosselló et al.*, Nos. KLCE201900643 cons. KLCE201900719, 2019 WL 5866182 (P.R. Cir. 2019) (Puerto Rico Court of Appeals) (Judgment in Spanish).

selection, vetting, and appointment process of candidates; (2) questions raised about the institutional affiliations, backgrounds and possible conflicts of interest as to potential and current Board members, and (3) the lack of meaningful public participation and poor oversight of the Board's operations, actions and policies. ECF# 1. Finally, these concerns also extend to the fact that there will continue to be new and renewed Board members' appointments and the people of Puerto Rico will remain in the dark about the selection process and identities of candidates for the most powerful government entity in Puerto Rico today. *Id.*

33. I reiterate the concerns raised in the Complaint and now, with the benefit of thoroughly reviewing the challenged records, I further expand upon the records' immense public interest.

34. There is still a significant public interest in understanding the selection process of the Board members for the sake of transparency and accountability and because the people of Puerto Rico could not participate in their appointment process. As Puerto Ricans residing on the archipelago, we do not vote for the Board members, the members of Congress who recommend them, nor the U.S. President who appoints them.

35. The Board, before, during, and after its creation, has been perceived as an entity that would prioritize securing payments to bondholders and creditors. Given its broad powers, austerity measures resulting in precariousness in public services, and the anti-democratic actions taken by the Board thus far, holding the federal government accountable, as well as the actors involved in the crafting and implementation of its enabling legislation — including the U.S. Treasury — is of the utmost importance. The names of potential

candidates considered, but not selected, to serve on the Board are part of Puerto Rico's history and its relationship with the United States.

36. Even before PROMESA reached its first vote in Congress, candidates were already being considered for the Board, according to unredacted portions of challenged records, UST_604-UST_604 and UST_1294-UST_1295. Prior to the members' appointments, non-governmental actors recommended candidates, as did labor unions, UST_606 and UST_1095 and creditors, UST_0611. To fully understand how the federal government, notably Treasury and the White House, dealt with the Puerto Rico fiscal crisis, it is critical to know who exactly was considered to serve on the Board. For instance, were creditors favored over other stakeholders in the selection process? If released, the records would show whose interests were represented (or misrepresented) along the appointment process.

37. As my reporting and that of others have shown, the Board has promoted and implemented steep austerity measures. Through its fiscal plans and budgets, the Board has chosen and executed a neoliberal model, forcing Puerto Rico elected officials to reduce spending, privatize services, shut down schools, consolidate agencies, and ease rules for doing business in Puerto Rico without controls. Knowing and understanding the names, backgrounds, and ideologies of all candidates considered for the Board would help us know whether the selection and appointment process was skewed by design, from the beginning, with a pool of candidates that favored similar interests and policy-oriented views. Did the Treasury, White House, and other federal government actors skew the process? The public has a right to know this answer.

38. Throughout the congressional process, conflict of interest rules for Board members were minimized and eased. Although PROMESA requires financial disclosures, these rules are

not as stringent as those that federal employees are required to abide by.[39] The released portions of records in this case clearly show that conflicts of interest among candidates were a frequent and important topic of discussion during the selection and vetting process. For example, there is a list of potential candidates with conflicts that "would require a Presidential waiver to adequately serve." *See for example,* UST_1185, UST_1279, and UST_1290. Two appointees —Carlos García and José R. González— had worked in the Puerto Rico Government Development Bank, which was tasked with Puerto Rico fiscal management policy, and Banco Santander, which acted as underwriter of various Puerto Rico debt transactions. These previous professional backgrounds raise serious conflict of interest concerns, yet one list shows them without having possible conflicts. *See for example,* UST_1361. Releasing the challenged records would help the public understand and identify how exposed candidates were to potential conflicts of interest. What did the Treasury, White House, and other federal government actors deem a conflict? How did they handle these issues? The public has a right to know these answers.

39. As my reporting shows, the Puerto Rico fiscal and economic crisis was years in the making and many public and private actors intervened in the decisions that led to PROMESA's approval. For example, former government officers and consultants were reportedly being considered to serve on the Board.[40] Releasing the challenged records will shed light on whether this was so despite having participated in the events that led to Puerto Rico's fiscal crisis, the enactment of PROMESA, and the imposition of the Board.

---

[39] *Since PROMESA's approval, we have been kept in the dark about possible conflicts of interest in the Board*, Espacios Abiertos, https://tinyurl.com/yc659mr8.

[40] Jack Casey, *Who Might Serve on the PROMESA Oversight Board*, The Bond Buyer, (Jun. 17, 2016), https://tinyurl.com/h4rnp7ab; Joel Cintrón Arbasetti & Carla Minet, *Expresidentes del BGF, fondos buitre y banqueros en listas que pronostican a los miembros de la junta de control fiscal*, Centro de Periodismo Investigativo, (Jul. 1, 2016) (reporting in Spanish), https://tinyurl.com/yey48xaj.

40. The Board will continue to operate in Puerto Rico and we do not know for how long. There was a second round of appointments by President Donald Trump, and the new Executive Director of the Board, Robert Mujica, has suggested that the Board could stay for even longer than initially anticipated. On June 29, 2023, Mujica said that the Puerto Rico government still had work to be done in delivering four consecutive balanced budgets and having access to financial markets, which makes it "premature" to predict when it would cease operations.[41] In 2021, Board Chairman David Skeel said he expected the Board to cease operations by the summer of 2025.[42] Releasing the challenged records, including the names and backgrounds of candidates who were considered the first time around, would help identify if any of those initial candidates became part of the Board as staff, consultants, or members.

41. Fiscal control authorities, such as the Puerto Rico Board, have proliferated across counties and cities throughout the U.S. in the past decades.[43] Releasing these records would set a precedent in favor of transparency and help citizens understand the federal government's process for establishing these entities, particularly other Fiscal Oversight Boards under PROMESA, which applies to all U.S. Territories. Actions taken by the federal government, including the Treasury and the White House, with respect to Puerto Rico's fiscal crisis, foretell what could happen in other U.S. jurisdictions, notably since some have recently experienced similar fiscal woes to that of Puerto Rico, like the U.S. Virgin Islands.[44] There

---

[41] *Mujica: PR has a long way to go before fiscal board can make its exit*, The San Juan Daily Star (Mar. 20, 2023), https://tinyurl.com/45y4urhx.

[42] Daniel Rivera Vargas, *Junta fiscal estima su fin en junio 2025*, Microjuris, (Aug. 9, 2021) https://tinyurl.com/4xhrvdtn (reporting in Spanish).

[43] Joel Cintrón Arbasetti & Carla Minet, *The Silent Expansion of Fiscal Control Boards in the U.S.*, Centro de Periodismo Investigativo, (June 1, 2017), https://tinyurl.com/3t42wjzj.

[44] Mary Williams Walsh, *After Puerto Rico's Debt Crisis, Worries Shift to Virgin Islands*, New York Times (June 25, 2017), https://tinyurl.com/42mkv356.

is a great public interest, especially for the U.S. Territories, in understanding how the federal government sets up these powerful mechanisms and who might be considered to run them.

42. Finally, economists have concluded that, as of today, the PROMESA experiment "has failed to accomplish most of the objectives set forth by its authors" and it has "come at an immense economic, political, and social cost to the people of Puerto Rico."[45] Releasing these records would help the public better understand if the experiment was doomed from the beginning and whether the Treasury's deep involvement and "central role" in implementing the law was impacted by this failure. Dickerman Decl. ¶ 7. To promote an honest and open government, vital to any aspiration of democracy, the people of Puerto Rico deserve to know how the federal government, including the Treasury, President, and Congressmen whom they did not elect, shape and control the affairs of Puerto Rico.

*

43. I declare under penalty of perjury that the matters set forth in this Declaration are true and correct to the best of my knowledge, information, and belief.

Executed on July 21, 2023.
San Juan, Puerto Rico

_____
Luis Valentín Ortiz
Investigative Journalist
Centro de Periodismo Investigativo de Puerto Rico

---

[45] *PROMESA: A Failed Colonial Experiment?*, Grupo CNE, (June 29, 2021), https://tinyurl.com/52e6wsa2.